**SIMMONS & GOTTFRIED, PLLC**
Jared C. Simmons (Bar No. 018624)
8160 E. Butherus Drive, Suite 7
Scottsdale, Arizona 85260
Tel (480) 998-1500
jared@sglawaz.com
court@sglawaz.com
*Attorneys for Respondent Arizona Rangers*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grant G. Winthrop,<br><br>                     Petitioner,<br><br>vs.<br><br>Arizona Rangers,<br><br>                   Respondent. | **No. CV-25-04317-PHX-GMS**<br><br>**RESPONDENT ARIZONA RANGERS' AMENDED OBJECTION TO PETITION TO COMPEL ARBITRATION**<br>**–AND—**<br>**RULE 12(b)(6) MOTION TO DISMISS BASED ON CLAIM PRECLUSION (*RES* JUDICATA) AND STATUTE OF LIMITATIONS**<br><br><br>**(Oral Argument Requested)** |

## <u>AMENDED OBJECTION TO PETITION TO COMPEL ARBITRATION</u>

Respondent Arizona Rangers respectfully moves the Court to deny Petitioner Grant G. Winthrop's "Motion to Compel Arbitration" (Doc. 24) because: (1) the form contract that Winthrop produced requires Winthrop to use the Arizona Rangers' "Grievance Resolution procedure" before seeking arbitration, which Winthrop never did; (2) Winthrop forever waived arbitration by filing counterclaims against the Arizona Rangers in this Court in *Wine Education Council v. Arizona Rangers,* No. CV-19-02235-PHX-SMB (the "2019

1

Case"); and (3) under the doctrine of claim preclusion or *res judicata,* this Court has the power to defend its judgments, including the power to enjoin later arbitrations. For each of those reasons, the petition to compel arbitration should be denied.

To avoid wasting any more of this Court's time, the Arizona Rangers will be brief. First, whether a contract creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination. *AT&T Tech., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649 (1986). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate *is to be decided by the court*, not the arbitrator." *Id.* (emphasis added).

Winthrop produced only an *unsigned* form contract with his petition to compel arbitration. *See* "Petition to Compel Arbitration" (Doc. 1) at Exhibit A, copy attached as Exhibit 1. After searching for a signed contract without success, the Arizona Rangers do not believe that Winthrop ever executed the arbitration agreement, but it is difficult to prove a negative – no one can attest that Winthrop did *not* execute the arbitration agreement. Winthrop, as the petitioner, bears the burden of proving the existence of an arbitration agreement and he has not offered a signed contract, which arguably defeats his claim. Nevertheless, if the Court is persuaded by the evidence he has provided, other issues preclude a finding that he is entitled to arbitration.

Second, even if he had offered a fully executed arbitration agreement in the form he has produced with his petition and motion, the arbitration agreement provides that, before arbitration, any dispute or claim "shall first be resolved by use of the Grievance Resolution procedure outlined in the Arizona Rangers Governing Documents." *See* Exhibit 1, first full

paragraph. Winthrop has not alleged, nor has he ever attempted, to resolve any disputes by use of the Arizona Rangers' "Grievance Resolution procedure." His failure to comply with that condition precedent bars him from compelling arbitration.

Third, Winthrop waived any right he ever had to compel arbitration by filing counterclaims against the Arizona Rangers in the 2019 Case. *See Hoffman Const. Co. of Ore. v. Active Erectors and Installers, Inc.,* 969 F.2d 796, 798 (9th Cir. 1992). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration from such inconsistent acts." *Id.* In this case, if Winthrop ever had a right to arbitration, he had that right in May 30, 2019 when the Arizona Rangers filed a third-party complaint against him in the 2019 Case. Rather than moving to compel arbitration of the Arizona Rangers' third-party claims against him, Winthrop knowingly and voluntarily filed counterclaims against the Arizona Rangers. The Arizona Rangers are prejudiced by incurring the time and expense of that lawsuit and by the passage of seven years. Therefore, Winthrop waived any right he ever had to arbitration.

Finally, as set forth in the following motion to dismiss, Winthrop's claims are barred by the doctrine of claim preclusion or *res judicata.* "No matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations." *In re Y & A Group Securities Litigation,* 38 F.3d 380, 382 (8th Cir. 1994), *cited in, Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1134 (9th Cir. 2000). "The district court, and not the arbitration panel, is the best interpreter of its own judgment." *In re Y & A Group,* 38 F.3d at 383. Federal courts "should not have to stand by while

3

parties re-assert claims that have already been resolved." *Id.,* 38 F.3d at 382. "The justification rests on the presumption that the court issuing the original decision is best equipped to determine what was considered and decided in that decision and thus what is or is not precluded by that decision." *Chiron Corp.,* 207 F.3d at 1134.

For each of those reasons, Winthrop is not entitled to arbitrate claims that have already been decided, and the petition and motion to compel arbitration should be denied.

### RULE 12(b)(6) MOTION TO DISMISS

Under Rule 12(b)(6), Fed. R. Civ. P., the Arizona Rangers respectfully move the Court to dismiss this action with prejudice because Winthrop's claims are barred by the doctrine of claim preclusion or *res judicata* and his individual claims are each barred by the applicable statutes of limitations. As set forth below, Winthrop's claims are forever barred by the final judgment in the 2019 case. He had his "day in court" years ago.

### I.    Factual background.

The background facts are largely immaterial. Therefore, for purposes of brevity, the Arizona Rangers incorporate by this reference the "Order," filed July 29, 2021 (Doc. 232) in the 2019 Case, copy attached as Exhibit 2. In brief, Winthrop, who comes from "old money," graduated with a J.D. degree in 2011 but never became a member of a state bar during any relevant time. In 2016, he became an associate member of the Arizona Rangers and began arranging donations or grants to the Arizona Rangers through his family's organization, the Wine Education Council, of which his father was general counsel. A falling out between Winthrop and the Arizona Rangers occurred when Winthrop not only obtained the funds but also took it upon himself to spend the funds. He went so far as to

take out a credit card in the name of the Arizona Rangers until ordered to stop.

In retribution, the Wine Education Council, essentially run by Winthrop's father, sued the Arizona Rangers in the 2019 Case for the return of money given to the Arizona Rangers by way of grants from the American Endowment Foundation. *See* Exhibit 2 at pp. 1-2. The Arizona Rangers denied any wrongdoing and also filed a third-party complaint against Winthrop, whom it alleged had control over distribution of the funds. *Id.* at p. 2. The third-party complaint, filed *May 20, 2019,* alleged that, to the extent the Arizona Rangers were liable to the Wine Education Council for misuse of the funds, Winthrop should indemnify the Arizona Rangers for that misuse under theories of negligence and breach of fiduciary duty. *Id. Rather than moving to compel arbitration*, Winthrop filed counterclaims against the Arizona Rangers for abuse of process, breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. *Id.*

In ruling on the parties' motions for summary judgment, this Court granted summary judgment on Winthrop's claims on *July 29, 2021*. *Id.* at pp. 13-24. Finding no just reason for delay, this Court then directed entry of a Rule 54(b) judgment on Winthrop's counterclaims against the Arizona Rangers for (1) abuse of process, (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, and (4) unjust enrichment. *See* "Order," filed *October 14, 2022* (Doc. 284) in the 2019 Case, copy attached as Exhibit 3.

## II.    Winthrop's claims are barred by the doctrine of claim preclusion or *res judicata.*

Claim preclusion is a doctrine that "bars a party in successive litigation from pursuing claims that were raised *or could have been raised* in a prior action." *Save the Bull Trout v. Williams,* 51 F.4th 1101, 1107 (emphasis added). It serves to "protect against the

expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* Claim preclusion prevents "parties from contesting matters that they have had a full and fair opportunity to litigate." *Whyte Monkee Productions LLC v. Netflix, Inc.,* 757 F.Supp.3d 1025, 1029 (N.D. Cal. 2024). The "opportunity to litigate" encompasses not only claims that were actually litigated but also those claims that a party could have raised in a previous suit but failed to do so. *Id.*

Claim preclusion applies when "the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Save the Bull Trout,* 51 F.4th at 1107; *Whyte Monkee Productions,* 757 F.Supp.3d at 1029; *Guzzi v. Clarke,* 629 F.Supp.2d 161, 162 (D. Mass. 2009). In this case, the previous lawsuit, the 2019 Case, was resolved by a final judgment and involved the identical parties as in this case (Winthrop and the Arizona Rangers). Thus, the second and third elements are satisfied as a matter of undisputed fact and law.

As to the first element, that element is analyzed under a "transactional test," "which asks whether the claim asserted in subsequent litigation arises out of 'the same transaction, or series of connected transactions as a previous suit.'" *Whyte Monkee Productions,* 757 F.Supp.3d at 1029. The central question is whether the claims in the two suits arise out of one "discrete and unitary factual occurrence." *Id.*

In this case, the two lawsuits arise out of the *identical* factual occurrence: the falling out between Winthrop and the Arizona Rangers. Not only the facts are identical, but Winthrop's claims, although couched in slightly different terms, are identical or nearly

identical.  In the 2019 Case, Winthrop alleged claims against the Arizona Rangers of (1) abuse of process, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) unjust enrichment.  *See* Exhibit 3.  In this case, he alleges claims of (1) "Wrongful Institution of Civil Proceedings," (2) "Tortious Interference," and (3) "Fraud," and seeks the same damages.  *See* "Petition to Compel Arbitration" (Doc. 1) at Exhibit B, pp. 13-16.  The claims and prayers for relief are nearly identical to those rejected in the 2019 Case, but, even if not, the claims in this lawsuit are claims that could have been, and should have been, raised in the 2019 Case.  Therefore, they are forever barred by the doctrine of claim preclusion or *res judicata.*  Winthrop has had his day in court; he is not entitled to a do-over.  *See Save the Bull Trout,* 51 F.4th at 1109.

### III.    Each of Winthrop's claims is barred by the running of the applicable statute of limitations.

Winthrop's claim for wrongful institution of civil proceedings is governed either by the one-year statute of limitations in A.R.S. § 12-541(1) or the two-year statute of limitations in A.R.S. § 12-542(1).  Winthrop's claim for tortious interference is governed by the two-year statute of limitations in A.R.S. § 12-542(1).  Winthrop's claim for fraud is governed by the three-year statute of limitations in A.R.S. § 12-543(3).

"As a general matter, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another."  *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 182 Ariz. 586, 588 (1995).  Under the "discovery rule," a plaintiff's cause of action accrues when the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause.  *Id.*

In this case, Winthrop not only was able to sue but he actually sued the Arizona

Rangers when he filed his counterclaims against the Arizona Rangers on *March 10, 2020*. Thus, it is not a question of whether Winthrop exercised reasonable diligence or should have known the facts: he *knew* the facts underlying his causes of action and filed suit. Setting aside the time limits for filing compulsory counterclaims and even taking the longest of the limitation periods into account, Winthrop was required to file his claims no later than *March 11, 2023*. He did not file his "Petition to Compel Arbitration" (Doc. 1), however, until November 11, 2025, *twenty-one months too late*. Therefore, all of his claims are barred by the applicable statutes of limitations.

## III. Conclusion.

For those reasons, the Arizona Rangers respectfully move the Court to dismiss this lawsuit with prejudice. Because Winthrop's lawsuit was brought without substantial justification, meaning that his petition to compel arbitration is groundless and not made in good faith, the Arizona Rangers also request an award of their attorneys' fees incurred in this action as a sanction under A.R.S. § 12-349(A)(1).

DATED this 30th day of March, 2026.

SIMMONS & GOTTFRIED, PLLC

*/s/ Jared C. Simmons*

Jared C. Simmons
*Attorneys for Respondent Arizona Rangers*

Emailed this same day to:

AaronT. Martin
Catie B. Kelley
Martin Law & Mediation PLLC
11811 N. Tatum, Suite 3031
Phoenix, AZ 85028
aaron@martinlawandmediation.com
catie@martinlawandmediation.com
Attorneys for Plaintiff


By: */s/ Cheryl Dunlap*

# EXHIBIT 1

## Arizona Rangers

# DISPUTE RESOLUTION, BINDING INDIVIDUAL ARBITRATION AGREEMENT, AND WAIVER OF JURY TRIAL

By signing below, the Member hereby agrees that all disputes, no matter how described, pleaded, or styled, between the Member and the Arizona Rangers (the **"Corporation"**) (including its parent and any past or present affiliates, officers, employees, or lenders), including, but not limited to, any dispute relating to any aspect of the Member's relationship with or any act or omission by the Corporation, (**"Claim"**) shall first be resolved by use of the Grievance Resolution procedure outlined in the Arizona Rangers Governing Documents. If the Claim is not resolved, both the Corporation and the Member irrevocably waive their rights to a trial by jury and agree instead to submit all Claims to binding, confidential, individual arbitration before a single, neutral arbitrator under the Federal Arbitration Act (**"FAA"**) conducted by the American Arbitration Association (**"AAA"**) under its Consumer Arbitration Rules (if a claim is initiated prior to the effective date of the Consumer Arbitration Rules, then it shall proceed under the Commercial Arbitration Rules and applicable Supplementary Procedures for Consumer-Related Disputes) (**"AAA Rules"**) and in accordance with the AAA Consumer Due Process Protocol and the terms of this Dispute Resolution, Binding Individual Arbitration Agreement, and Waiver of Jury Trial (**"Agreement"**). A copy of the applicable AAA Rules and forms may be obtained directly from the AAA at www.adr.org or 800-778-7879. Nothing in this Agreement prohibits the Member from filing a complaint with the state regulatory agency or accrediting agency listed in the Corporation Catalog. In addition, the Member and the Corporation retain their right to seek relief in a small claims court for Claims within the scope of that court's jurisdiction. The parties hereby further agree as follows:

- The FAA (including all its procedural and substantive provisions) and related federal decisional law shall govern this Agreement to the fullest extent possible.

- Except for the parties' right to seek relief in a small claims court as provided in this Agreement, neither party shall file an action in any court against the other, and any such action filed in violation of this Agreement shall be dismissed in favor of arbitration. The parties recognize that the breach of this Agreement will cause the other party damage including, but not limited to, attorneys' fees and costs incurred in compelling arbitration, which the breaching party will be liable for.

- Except as specifically required by law of the State of Arizona in which this Agreement is executed, the fact of and all aspects of an arbitration and the underlying Claim shall remain strictly confidential by the parties, their representatives, the arbitrator, and the AAA.

- Only the arbitrator is authorized to make determinations as to the scope, enforceability, validity, and effect of this Agreement. If any part of this Agreement is found to be invalid or unenforceable, then the parties agree that such specific part or parts shall be of no force and effect and shall be severed, but the remainder of the Agreement shall continue in full force and effect. This Agreement will survive the termination of the member's relationship with the Corporation.

- If arbitration occurs, it shall be conducted at a location convenient to the Member, unless the parties agree otherwise in writing.

- The arbitrator shall have the power to award any remedy that directly benefits the parties to this Agreement (provided the remedy would be available from a court under the law of the applicable jurisdiction) but not the power to award relief for the benefit of anyone not a party to this Agreement. The arbitrator's award shall be final and binding on the parties, but subject to review in accordance with the FAA. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction.

- If the Member initiates arbitration, the Member will be responsible for paying a portion of the AAA filing fee at the time the Claim is filed in an amount equal to $200 or the applicable filing fee of any court in the district in which the Member resides, whichever fee is less. The parties shall bear their own costs and expenses associated with their attorneys, experts, and witnesses, unless the arbitrator determines otherwise in strict accordance with the applicable law.

- This Agreement shall not be modified except by written agreement signed by both parties. Notwithstanding, if the AAA requests the waiver of any provision in this Agreement in order for the Claim to remain before the AAA under the AAA Rules, such provision(s) may be waived unilaterally by the party against whom the Claim is asserted, but such waiver shall be in writing and executed by the party against whom the Claim is asserted (if the Claim is against the Corporation, the waiver must be signed by the State Commander) and specifically identify the provision or provisions being waived. Any such waiver shall not waive or affect any other portion of the Agreement.

---

Member Name                           Member Signature                          Date


---

Corporation Representative Name        Corporation Representative Signature       Date


AR Form s-351;rev.01;Jul16

# EXHIBIT 2

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wine Education Council,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Rangers,<br><br>Defendant. | No. CV-19-02235-PHX-SMB<br><br>**ORDER** |

Pending before the Court are four separate motions for summary judgement. The first is Defendant/Third Party Plaintiff Arizona Rangers' ("AZR") Motion for Summary Judgment on Plaintiff Wine Education Counsel's ("WEC") claims against it, which has been fully briefed. (Docs. 190, 209, & 218.) The second is AZR's Motion for Summary Judgement on Third-Party Defendant Grant Winthrop's ("Mr. Winthrop") Counterclaims, which has also been fully briefed. (Doc. 191, 207, & 216.) The third is Mr. Winthrop's Motion for Summary Judgement on AZR's remaining claims against him, which has again been fully briefed. (Docs. 192, 202, & 219.) The fourth is WEC's Motion for Partial Summary Judgement against AZR which has also been fully briefed. (Docs. 194, 205, & 217.) The Court heard oral argument on the motions on July 1, 2021. Now having considered the parties arguments and the relevant law, the Court issues the following order.

**I. BACKGROUND**

The factual background of this litigation has been fully related in the previous orders of the Court and need not be reiterated in full here. It is sufficient to note that Plaintiff WEC

is suing AZR for the return of money given to AZR by way of grants from the American Endowment Foundation. WEC's original lawsuit alleged a right to the money as assignee and backup beneficiary to the funds, claiming AZR had misused and misappropriated the grant money, and failed to abide by the terms imposed upon the grants. AZR denied any wrongdoing and also filed a Third-Party Complaint ("TPC") against Mr. Grant Winthrop, whom it alleged had control over distribution of the funds. AZR's TPC alleged that to the extent it was found liable to WEC for misuse of the funds, Mr. Winthrop would be liable to AZR for that misuse under theories of negligence and breach of fiduciary duty. Mr. Winthrop in turn responded to AZR's TPC by filing a Counterclaim alleging breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment.

After more than two years of litigation, the parties filed the present summary judgment motions. The majority of argument in the parties respective motions deals with the scope, application, and effect of a provision that is incorporated by reference in a grant received by AZR in June of 2017. The June grant stated that it was made pursuant to a letter requesting the funds dated May 15, 2017 ("the Letter") and that the grant to be used as that Letter described. The Letter's pertinent terms read as follows:

> Please find attached our proposal for a $37,500.00 grant to the Arizona Rangers. If the Wine Education and/or Veritas Fund of the American Endowment Foundation, hereinafter Veritas, makes the grant it will be used per the following guidelines and for the specified purposes set forth below:
>
> The Arizona Rangers, hereinafter, ("Rangers") are a law enforcement support corporation holding tax exempt status with the Internal Revenue Service. The East Valley Ranger Company, hereinafter, ("Company") is a subset of the Rangers. It is currently commanded by Captain Jeff East, as commanding officer he has discretion over unrestricted funds allocated to the Company. If Jeff East is unwilling or unable to decide or is removed from command for any reason, then First Lieutenant Doug Sankey currently acting as Company executive officer shall assume responsibility for the use of discretionary Company funds in this grant. If neither Captain East nor Lieutenant Sankey are able to exercise discretion over these funds for any reason, then the funds become discretionary funds of the East Valley Ranger Troop.

The East Valley Troop, hereinafter, ("Troop") is presently composed of one associate Ranger and two Associate Ranger applicants, respectively Grant Winthrop, Vance Ownbey and Peter Steinmetz. Regardless of their application status or other members of the troop at the time the grant is made, if it is made, these three shall be the voting members of the Troop responsible for allocation of Troop discretionary funds…

\*\*\*\*\*                                        \*\*\*\*\*                                        \*\*\*\*\*

We recognize that if for any reason the East Valley Ranger Troop ceases to operate all property acquired for the Troop shall be turned over to the Wine Education Counsel. Similarly, any Troop discretionary funds shall be turned over to the Wine Education Counsel should the Troop cease to operate for any reason…

(Doc. 98-28.) Also included in the Letter were various terms allocating sections of the $37,500.00 grant to the Troop, the East Valley Company, and Ranger Headquarters. (*Id.*)

The Letter is featured heavily in three of the present motions. AZR argues that it is entitled to summary judgement in this case as to all grants other than the June 2017 grant because the Letter only states that "the grant" (singular) will be used according to the terms of the letter. According to AZR, the fact that the Letter of a single grant unambiguously means that its conditions, including the term requiring funds and property be turned over to WEC, apply only to the funds of that single grant. (Doc. 190 at 10-12.) AZR further contends that even with regards to the funds of the June 2017 grant, the Letter's correctly construed terms show WEC is not currently entitled to the grant funds. (*Id.* at 12-15.)

The motion for summary judgment filed by WEC also largely concerns the terms of the Letter, albeit seeking opposing results. WEC's motion seeks an order declaring the contracts associated with the grants to be unintegrated and thus potentially subject to an oral condition incorporating the Letter's terms into the terms of the other grants. The Motion also requests a ruling by the Court that the terms of the Letter are ambiguous, and as such, subject to the admission of parol evidence to explain them. (Doc. 194 at 8-13.)

The motion for summary judgment filed by Mr. Winthrop against AZR also references the Letter. Mr. Winthrop argues that this entire case is really only about WEC's

- 3 -

right to have property and money turned over via the recovery clause contained in the Letter. (Doc. 192.) Mr. Winthrop points out that AZR's TPC has all along been premised on the argument that if AZR were found to have misused the grant funds, Mr. Winthrop would be liable to it for such misuse. Mr. Winthrop argues that because the sole issue in the case is whether the recovery clause requires funds to be turned over, there is no remaining theory by which he could be liable to AZR.

The remaining motion for summary judgement has been filed by AZR and seeks resolution of Mr. Winthrop's counterclaims against it. Mr. Winthrop's counterclaims allege that AZR is liable to him for breach of contract, breach of the duty of good faith and fair dealing, and in the alternative, for unjust enrichment. Mr. Winthrop alleges that AZR breach an implied contract with him when it failed to reimburse him for funds allegedly spend on AZR's behalf and similarly breached an implied contractual duty to put adequate safeguards and controls in place over the use of the grant funds. His claims for breach of the duty of good faith and fair dealing and for unjust enrichment follow similar theories. AZR's motion for summary judgment argues that Mr. Winthrop's claim for breach of contract must fail because he cannot show any contractual duty owed to him which was breached and further cannot show damages. (Doc. 191 at 4-10.) AZR has also argued that Mr. Winthrop cannot prove all the elements necessary to survive summary judgment for his unjust enrichment and good faith and fair dealing claims. (*Id.*)

**II. LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### III. ANALYSIS

#### A. AZR and WEC's Cross-Motions for Summary Judgement

The Courts will first turn to AZR's Motion for Summary Judgement on WEC's

claims and WEC's motion for partial summary judgement on two issues of contract interpretation. AZR's motion argues it is entitled to summary judgement on WEC's claims against it. First, AZR argues that WEC cannot succeed on its breach of contract claims because the provision requiring it turn over property to WEC, found in a May 15, 2017 letter, by its own terms unambiguously applies to one of the six grants. (Doc. 190 at 10-12.) Second, AZR argues that even for the grant to which the Letter applies, the "turnover" provision is ambiguous and should be construed in AZR's favor. (*Id.* at 12-15.) Third, AZR asserts that, as it previously argued in its first motion for summary judgment, (Doc. 98), there is no evidence of misappropriation of funds by AZR. (Doc. 190 at 15-16.) AZR also argues WEC cannot show breach of the duty of good faith and fair dealing because there is no evidence it has acted in bad faith, and the contracts upon which the claim is brought have not been breached. (*Id.* at 16-17.)  Finally, AZR argues that summary judgement is merited on WEC's unjust enrichment claim because "if there is 'a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" (Doc. 190 at 17 (quoting *Trustmark Ins. Co. v. Bank One, Ariz., N.A.*, 48 P.3d 485, 492 (App. 2002)).

WEC argues both in its response and its own motion for partial summary judgement that summary judgement on its claim is not appropriate because the terms of the parties' agreement are dependant on disputed issues of fact. (Doc. 194; Doc. 209 at 8-17.) WEC asserts that the terms of the grants cannot be determined on summary judgment because (1) the contract associated with the grants is unintegrated and subject to oral conditions, and (2) even if the written terms of the grant are ambiguous, their interpretation is subject to parol evidence. (*Id.*) With regard to its claim based on the covenant of good faith and fair dealing, WEC argues that this claim cannot be resolved until the terms of the parties' agreement are determined by the jury. (Doc. 209 at 17.) After all, the covenant of good faith, implied in every contract, prevents the parties from impairing each others' right to receive the benefits expected to flow from their contract. *Bike fashion corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002). Thus, WEC argues until the terms of the contract are

established, the court cannot find as a matter of law that WEC's right to benefits of that contract has been impaired. (Doc. 209 at 17.) Finally, WEC argues its unjust enrichment claims is pled in the alternative which is allowed as long as it does not lead to double recovery.

AZR's reply reiterates its argument for interpreting the Letter's terms in its favor. (Doc. 218 at 1-4.) Additionally, AZR argues both in its reply and in its response to WEC's motion for partial summary judgement that the terms of the parties' contract cannot be subject to oral non-integrated terms because those terms would violate the statute of frauds. (Doc. (Doc. 205 at 5; Doc 218 at 4.) Additionally, AZR notes that WEC's response did not contest AZR's request for summary judgement on WEC's claims for misuse or misappropriation of the grant funds. (Doc. 218 at 4.)

The Court will grant summary judgment with regard to AZR's motion on WEC's claim for breach of contract based on misappropriating or misspending grant funds.[1] The Court takes WEC's failure to answer AZR's argument as an admission that summary judgment is appropriate. Fed. R. Civ. P. 56(e); *Harleysville Ins. Co. v. King's Express, Inc.*, No. CV 19-3817-DMG (SKx), 2020 U.S. Dist. LEXIS 247748, at *18 (C.D. Cal. July 6, 2020) (citing *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2000)). The Court is further confident that summary judgment is appropriate due to an affidavit filed by Mr. John Winthrop, WEC's general counsel. On the very day AZR filed its motion for summary judgment, AZR's general counsel signed an affidavit stating that "WEC's claims in this case are not based on any part of any allegation that the specific items purchased with grant funds were improperly purchased." (Doc. 193-14 at 3.) In light of the above, the

---

[1] As AZR notes, it previously filed a motion for summary judgment that encompassed this same subject. (Doc. 98.) However, the Court granted Rule 56(d) relief to WEC and denied the motion without prejudice after WEC argued it could not adequately evidence its claims without additional discovery. (Docs. 107; 122.) WEC's counsel, Mr. Braddock filed an affidavit asserting that, among other subjects, additional discovery was necessary "to obtain information relating to…individual Rangers' use of the Grant Monies or equipment purchased by the Grant Monies—information essential to ascertain the Rangers' understanding of the restrictions and whether the Rangers materially breached the Grants." (Doc. 107-4 at 3.)

Court finds that AZR is entitled to summary judgment in its favor on WEC's claim for breach of contract based on alleged misuse and misappropriation of the grant funds.

However, The Court finds that summary judgement is not appropriate on WEC's claim for breach of contract based on the turnover clause. The Court finds that some of the specific terms in the grants are ambiguous and further holds that it cannot as a matter of law find the parties' agreement integrated. As WEC points out, both parties agree that the term "troop" as used in the recovery clause is ambiguous. (Doc. 190 at 13; Doc. 209 at 13.) WEC also points to testimony on the record supporting its position that the grant agreements were not integrated contracts and are potentially subject to evidence establishing additional oral conditions.

### i. Written Terms in the Letter are Ambiguous

Ambiguities in the parties' agreement prevent summary judgment. Whether contract language is ambiguous is a question of law for the court. *St. Philip's Plaza, LLC v. Noble Inv. Grp., LLC*, No. CIV 15-344-TUC-CKJ, 2015 WL 13816722, at *4 (D. Ariz. Nov. 13, 2015). Language is ambiguous when it can reasonably be construed to have more than one meaning. *E-Z Livin' Mobile Homes, Inc. v. Tommaney*, 550 P.2d 658, 661 (Ariz. 1976) (finding the purchase order ambiguous in its description, the time of performance, and the financial obligation).

The Letter containing the recovery clause defines the terms "East Valley Ranger Company" and "East Valley Troop," but the recovery clause refers to the "East Valley Ranger Troop" which appears to be an amalgamation of the two defined terms. (Doc. 98-28.) Because it is ambiguous as to what is meant by the "East Valley Ranger Troop," in the turnover clause the Court cannot as a matter of law determine what event "triggers" the turnover provision of the Letter. Further, the scope of the recovery clause's application is ambiguous. While AZR argues the language of the Letter clearly applies only to a single grant, (Doc. 190 at 11; Doc. 218 at 2 ("'It' does not mean 'they[,]' and 'grant' does not mean 'grants'")), the Court is not persuaded. WEC has proffered the existence of oral evidence that the parties understood the term to apply to the funds of all the grants.

Additionally, the recovery clause of the letter speaks of turning over "*all* property acquired for the Troop" and "*any* Troop discretionary funds." While this term could be interpreted as applying "any" and "all" within the scope of the single grant, it could also be interpreted as conditioning the single grant upon AZR's agreement to turn over all funds and property associated with "the troop," regardless of their source. The Court finds that the scope of the Letter's application and the definition of certain terms remains ambiguous. Accordingly, summary judgment is not appropriate.

### ii. The Grant Agreements may be Subject to Additional Oral Conditions

"The question of integration and interpretation of a contract is initially one for the court and is decided as a preliminary question before applying the parol evidence rule." *Anderson v. Preferred Stock Food Markets, Inc.*, 854 P.2d 1194, 1187 (Ariz. Ct. App. 1993). To determine whether the contract is integrated courts should consider "all the surrounding circumstances," *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 716 (Ariz. 1991), including the parties' "negotiations, prior understandings, and subsequent conduct" to determine the extent of integration and/or the parties' formative intent. *Anderson*, 854 P.2d at 1197; *see also* Shirley J. McAuliffe, 1 Ariz. Prac., Law of Evidence § 104:8 (4th ed. 2020) ("Arizona has always permitted parol evidence to be received on the issue whether the written agreement is truly an integrated statement of the parties' intended bargain.").

The Court finds that the grant contracts may be unintegrated and subject to an oral condition incorporating the "turnover provision" of the Letter into the other grants. In considering all the surrounding circumstances, the Court finds that WEC has presented specific evidence on the record by which a jury could find the remaining grants were made subject to an oral term incorporating the Letter's recovery clause into the other grants. (Docs. 195 at 4; 195-8 at 4; 195-9 at 6, 9; & 195-13 at 2-3.) The Court disagrees with AZR's assertion that such an oral term would "vary or contradict" the meaning of the written words of the contracts. (Doc. 205 at 4 (citing *Taylor v. State Farm Mut. Auto Ins. Co.*, 175 Ariz. 148, 158-59 (1993).) As AZR's motion shows, the grant letters associated

with the other five grants contain almost no written terms. (Doc. 205 at 2-3.) Thus, no term is varied or contradicted by an oral term incorporating the Letter's turnover provision.

The Court also rejects AZR's argument that the statute of frauds prevents WEC from asserting oral conditions or modifications on the grants. AZR argues that "the grants were statutorily required to comply with the statute of frauds." (Doc. 205 at 4. (citing A.R.S. § 44-101(8)). The provision cited by AZR states that the statute of frauds applies to "an agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make provision for any person by will." A.R.S. § 44-101(8). AZR argues that "bequeath" in the statute should be interpreted as meaning "to…transfer real or personal property by formal declaration…" (Doc. 218 at 4 n.2.) The Court rejects this broad interpretation of the term based on the canons of "noscitur a sociis" and "ejusdem generis." *See Yates v. United States*, 574 U.S. 528, 543-44 (2015) ("noscitur a sociis…'avoid[s] ascribing to one word a meaning so broad that it is inconsistent with its accompanying words'…*ejusdem generis*, counsels: '[W]here general words follow specific words…the general words are [usually] construed to embrace only objects similar in nature to…the preceding specific words.'"). The Court interprets "bequeath" narrowly in light of the proceeding and surround words of the clause, which deal solely with promises performed on or after the promisor's death. A.R.S. § 44-101(8). The Statue of Frauds does not apply to the grants in question.

**B. Mr. Winthrop's Motion for Summary Judgement Against AZR**

The Court will next turn to Mr. Winthrop's motion for summary judgment on AZR's TPC. Mr. Winthrop's motion argues that at this stage in the litigation there is no longer any basis for AZR's claims against him. AZR's TPC only alleges Mr. Winthrop is liable to it to the extent AZR's liability to WEC is based on his actions. Mr. Winthrop argues, "WEC's damage claim rests entirely upon [AZR's] refusal to return funds and inventory, pursuant to the recovery clause." (Doc. 192 at 6.) Because AZR's liability to WEC is fully based upon the recovery clause, which was triggered after Mr. Winthrop left the organization, he argues summary judgement in his favor is appropriate on AZR's claims for breach of

fiduciary duty and negligence. (*Id.* at 6-10.)

AZR's response disagrees more with the focus of Mr. Winthrop's motion than with any factual contention within it. AZR points out that it has always maintained that its claims against Mr. Winthrop are contingent third-party claims. Thus, AZR argues that as long as the issue of whether it misused or misappropriated the funds remains an active claim in WEC's complaint, there will continue to be a disputed issue of whether Mr. Winthrop is in turn liable to AZR as the agent who caused the misuse or misappropriation to occur. (Doc. 202 at 1-5.) AZR further argues that Mr. Winthrop's motion starts with the premise that WEC is not asserting a claim based on misuse of the funds but rests the entirety of its claim on the recovery clause. AZR points out that if that were the case it would be more than willing to agree to dismissal of its claims against Mr. Winthrop but notes to the Court that prior to the filing of summary judgment, WEC took no steps to amend its complaint to remove the claims of misuse. (*Id.* at 5-8.) Finally, AZR argues that Mr. Winthrop's motion is in substance a "strawman" argument, seeking victory against a claim it never asserted. (*Id.* at 8-9.) AZR points out that Mr. Winthrop is arguing as if its claims of breach of fiduciary duty and negligence were based on Mr. Winthrop's failure to turnover grant funds after the recovery clause was triggered rather than addressing its actual claims against Mr. Winthrop which are contingent upon WEC's prevailing on the theory that funds were misused. (*Id.* at 9-13.)

Mr. Winthrop's reply contains two main arguments. First, Mr. Winthrop accuses AZR's response of "recharacterizing [WEC's] claims…to ignore WEC's actual claims, its disclosures, and the parties' discovery." (Doc. 219 at 2; *but see* Doc. 107-4 at 3 ("information relating to…individual Rangers' *use of the Grant Monies or equipment purchased* by the Grant Monies [is] essential to ascertain…whether the Rangers materially breached the Grants." (emphasis added)).) Mr. Winthrop claims that AZR should have know that WEC's claims were fully based on the recovery clause found in the Letter because WEC "updated its required disclosures to focus on the Recovery Clause," and the recovery clause was "the clear focus of WEC's discovery." (*Id.* at 6.) Thus, while Mr.

Winthrop does not seem to contest the fact that WEC never amended its complaint, he seems to argue that AZR should have known the sole grounds for recovery in this case depends on the recovery clause of the Letter. Second, Mr. Winthrop challenges AZR's contention that his motion is a "strawman" and that it never asserted a claim against him based on the Letter's Recovery Clause. Mr. Winthrop argues that AZR's TPC asserts in broad terms that "[t]o the extent it is determined Arizona Rangers is liable to [WEC]," it would be because of Mr. Winthrop's breach of fiduciary duty or negligence. (*Id.* at 7-9.) Mr. Winthrop points out that this claim in its broadest term could be interpreted as AZR claiming Mr. Winthrop is liable to it under every theory asserted by WEC and not just for recovery based on misuse.

Attached to his motion, Mr. Winthrop has filed an affidavit written by WEC's general counsel, who is also Mr. Winthrop's father. WEC's general counsel declares in the affidavit that the entirety of WEC's claims in this action are based on the recovery clause found in the May 15, 2017 Letter. (Doc. 193-14 at 3.) Further, WEC did not challenge AZR's contention on summary judgment that there was no evidence to support WEC's claims that grant funds were misused. (Docs. 190, 209, & 218.) As AZR has repeatedly clarified, its claims against Mr. Winthrop are contingent upon WEC's claims that AZR had misused or misappropriated the grant funds. In light of the contingent nature of AZR's claim, the Court's resolution granting summary judgement against WEC's claim for misuse or misappropriation of the funds also resolved AZR's claim against Mr. Winthrop. As such, Mr. Winthrop's request for summary judgment on AZR's claims is denied as moot.

Mr. Winthrop's argument seeking summary judgment due to his lack of involvement with the "turnover provision" of the letter is also denied as moot because no such claim was made or brought through this litigation. All throughout this litigation, AZR has demonstrated repeatedly that its claims against Mr. Winthrop were tied specifically to the theory that grant funds had been misappropriated or misused. Its TPC against Mr. Winthrop speaks extensively and exclusively of WEC's theory based on misuse or misappropriation of the funds yet says nothing about WEC's theory of relief based on the

recovery clause of the Letter. (Doc. 109 at 100-109.) His construction of AZR's claim as seeking indemnification based on the turnover clause is based only on a partial line from the TPC where AZR asserts Mr. Winthrop will be liable to it "to the extent" it is found liable to WEC. This construction ignores the fact that the entirety of the surrounding complaint speaks purely of liability based on the allegations of misuse and misappropriation of grant funds. (*Id.*) Further, it is not lost on the Court that Mr. Winthrop argues AZR's TPC be interpreted in its broadest possible terms to include a theory never litigated or mentioned by AZR while simultaneously contending WEC effectively "refined" its theory of relief in the case merely by focussing on certain subjects in its MIDP's and discovery requests. (*Compare* Doc. 219 at 3 ("AZR's Third Party Complaint is not so narrow.") *with id.* at 4 (arguing AZR should have known WEC's claim was fully based on the recovery clause because it was the focus of WEC's discovery.)). The Court finds that AZR made no claim against Mr. Winthrop based on the "recovery clause" in the Letter, so Mr. Winthrop's Motion seeking summary judgement is moot.

**B. AZR's Motion for Summary Judgement on Mr. Winthrop's Counterclaims**

AZR has filed a motion seeking summary judgement on Mr. Winthrop's counterclaims against it. AZR argues that Mr. Winthrop cannot produce evidence sufficient to establish the elements of any of his claims. Noting that the burden is on Mr. Winthrop to establish the existence of a contract, the breach of one of its terms, and resulting damages, AZR argues he has not adequately proven the existence of a contractual agreement to reimburse Mr. Winthrop for contractual expenditures and further has not presented competent evidence to support his damages. (Doc. 191 at 6.) Further, AZR argues Mr. Winthrop has not put forward any competent evidence of a duty owed to him by AZR to "implement reasonable safeguards." While AZR admits its handbook and rules do state that rangers should implement safeguards over funds and property in their individual possession, it claims that this rule does not create a duty owed to Mr. Winthrop. (*Id.* at 7.) Finally, AZR argues that Mr. Winthrop has not presented any evidence of legally cognizable damages flowing from the alleged breach of this duty, even if he could show

the duty was owed to him. (*Id.* at 7-8.)

Mr. Winthrop responds that summary judgement is not appropriate on his breach of contract claim because disputed facts remain as to "what the parties implied contract consisted of" and "key terms" remain highly disputed. (Doc. 207 at 6.) Mr. Winthrop argues he has presented evidence establishing both a contractual duty to reimburse him, and a duty under the bylaws to maintain safeguards over funds. (*Id.* at 8-9). Further, Mr. Winthrop contends that AZR "cannot prove a complete absence of breach" and that additional damages, other than those reimbursed by AZR, remain. (*Id.* at 9-12.) He alleges these same facts prevent summary judgment on his claims for breach of the duty of good faith and fair dealing and for unjust enrichment. (*Id.* at 13-14.)

### i. Lost Wages Claim

The Court will first turn to the arguments regarding Mr. Winthrop's lost wages. Mr. Winthrop claims that summary judgment is not appropriate because he has remaining damages in the form of lost wages. Mr. Winthrop argues that he has been "unable to obtain licensure in Washington state due to the claims asserted in this litigation. (Doc. 207 at 12.) Mr. Winthrop's argument references his additional statement of facts filed with the Court which states in pertinent part that "Section 29 of the Washington Bar Application requires [he]…disclose if [he] is party to any civil action. (Doc. 208 at 11.) Because Mr. Winthrop "would be required to disclose [AZR's] complaint" which contains allegations regarding his character, "Mr. Winthrop's counsel advised him not to apply…until after this litigation was concluded." (*Id.* at 12.)

First, the Court recalls to the parties' attention the representations made to the Court by counsel for Mr. Winthrop and WEC during oral argument on the parties' motions to dismiss. There, the Court specifically inquired about whether the litigation privilege would bar claims for damages that were based on statements made by AZR in the course of litigation. The inquiry went as follows:

THE COURT: And then one last, counsel, because I need to move on, that
you've cited a bunch of authority for why the litigation privilege does not

apply in tort cases but you are applying it in a contract case. I don't see any authority and you haven't cited any authority that says it applies in a contract case --

MR. DRAYE: We're not asserting --

THE COURT: -- or doesn't apply.

MR. DRAYE: -- the litigation privilege. The other side is asserting litigation privilege. *In short, our position on that is that we're not basing any of our claims on things that they filed in court in this proceeding…*

(Oral Arg. Trans. at 12:25-13:11.) Mr. Winthrop has not amended his counterclaim since this hearing was held. Thus, to the extent Mr. Winthrop's claim was not already barred by the Court's order on the parties' motions to dismiss, (Doc. 176 at 23), the Court will simply hold Mr. Winthrop to the statements made by his counsel. Winthrop cannot bring any claim of damages based upon statements made in the parties' court documents.

Second, even if the statements of Mr. Winthrop's counsel did not bar this claim, the prior ruling of this Court did. The Court's order on the parties' motion to dismiss specifically found that to the extent Mr. Winthrop's damages were "directly tied to the existence of the court case against him" they were barred "by the litigation privilege." (Doc. 176 at 23.) The Court explained that Arizona recognizes the "'overriding public interest that persons should speak freely and fearlessly in litigation' underlying the absolute litigation privilege entitles defendants to immunity from claims arising out of defamatory statements in a judicial proceeding." *Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 Ariz. App. Unpub. LEXIS 1296, at *5-6 (Ct. App. Nov. 26, 2019) (citing *Green Acres Tr. v. London*, 141 Ariz. 609, 613 (1984)). Thus, Arizona extends the litigation privilege not just to in-court statements and filed pleadings, but also to statements "relating to pending or proposed litigation." *Goldman v. Sahl*, 462 P.3d 1017, 1017 (Ariz. Ct. App. 2020). Here, the theory of Mr. Winthrop's claim for lost wages is entirely based on what he alleges to be false statements made by AZR in its Court filings. He argues he would have to disclose

- 15 -

these statements to the Washington State Bar due to an application question asking whether he is "party to any civil action." (Doc. 208 at 11.) Mr. Winthrop's claim for lost wages is entirely based upon documents filed and statements made in a court case against him. As such, they are barred by the litigation privilege. (Doc. 176 at 23.)

Third, even apart from issues surrounding the litigation privilege, the Court notes that Mr. Winthrop cannot recover lost wages as consequential damages without showing the item of damages was foreseeable and contemplated by the parties at the time of contracting. Mr. Winthrop argues that "[a] party may recover lost wages as consequential damages to a breach of contract claim." (Doc. 207 at 12 (citing *E-Z Livin' Mobile Homes, Inc. v. Tommaney*, 550 P.2d 658, 662 (1976).) But this is of course subject to the "well-established rule in Arizona that the damages for breach of contract are those which arise from the breach itself or which fall within the reasonable contemplation of the parties." *E-Z Livin' Mobile Homes, Inc.*, 550 P.2d 662; *see also McFadden v. Shanley*, 16 Ariz. 91, 96 (1914) (quoting *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854)). Mr. Winthrop has proffered no evidence showing the parties contemplated such damages when entering their alleged contract. As such, he has failed his burden on summary judgement under *Celotex*. 477 U.S. at 322 (finding summary judgment proper when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden…").

Fourth, even did the Court set aside the issues of foreseeability, there still remains issues regarding the speculative nature of Mr. Winthrop's damages. "Damages that are speculative or uncertain cannot support a judgment; the plaintiff must prove the fact of damage with reasonable certainty." *Larsen v. Snow Prop. Servs.*, No. 1 CA-CV 16-0205, 2017 Ariz. App. Unpub. LEXIS 241, at *7 (Ct. App. Mar. 7, 2017) (quoting *Coury Bros. Ranches, Inc. v. Ellsworth*, 103 Ariz. 515, 521 (1968)). Such proof "must be of a higher order than proof of the amount of damages." *Id.* Here, Mr. Winthrop cannot show with anything more than speculation that the allegations of the case would have prevented him from being barred in Washington. He did not apply to the bar. He never submitted any

character and fitness application. Instead, he chose to wait. He suggests he was forced to wait because if he had applied while the litigation was pending his application would have been denied but offers absolutely no proof as to why this would be the case. While he makes a passing reference to following the advice of Washington counsel, but gives no detail regarding who this counsel was or how they determined the allegations of the complaint would alone result in denial of Mr. Winthrop's admission. On such a scant record of proof, it is mere speculation to assert that Mr. Winthrop's application would have been subjected to "heightened scrutiny" due to the litigation, that the scrutiny would have resulted in his application's denial, or that by such denial he would have lost wages to the tune of $11,540 per month. *See Thunderbird Metallurgical Inc. v. Arizona Testing Labs.*, 5 Ariz. App. 48, 50 (1967) (damages must be proximately caused); *Smartcomm License Servs. LLC v. Palmieri*, Nos. 1 CA-CV 16-0265, 1 CA-CV 16-0281, 2018 Ariz. App. Unpub. LEXIS 42, at *8 (Ct. App. Jan. 9, 2018) (noting speculative damages are not recoverable and "[a]ffidavits and testimony by plaintiffs, without supporting documentation, may be found insufficient to overcome summary judgment.")

Fifth, and perhaps most germane, Mr. Winthrop leaves essentially unrebutted AZR's assertion that he cannot present any evidence showing that the alleged implied contract established a duty *owed to Mr. Winthrop* to keep reasonable safeguards in place regarding the funds. As AZR points out, under *Celotex*, summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. AZR has argued that Mr. Winthrop can point to no evidence on the record showing AZR owed a contractual duty to Mr. Winthrop to implement reasonable safeguards and controls. The existence of a contractual duty is of course "an element essential to" Mr. Winthrop's case, and one on which he will "bear the burden of proof at trial." *Id.*

Mr. Winthrop does not adequately respond to this argument. As *Celotex* makes clear, a Plaintiff cannot survive summary simply by pointing out the parties disagree;

parties in litigation are often in disagreement. Further, no matter how much dust has been kicked in the air, a Plaintiff may not proceed to trial simply by appealing to the absence of evidence *disproving* its claim. 477 U.S. at 322. Instead, under *Celotex*, the Plaintiff is put to his burden and must reach out into the disputed facts and point the Court to specific evidence by which a jury could find in the Plaintiff's favor on the elements of its claim. *Id.* AZR put Mr. Winthrop to this burden by asserting that there was no evidence on the record to support the existence of a contractual duty *owed by AZR to Mr. Winthrop* to maintain adequate safeguards and controls over the grant funds. (Doc. 191 at 7.) Mr. Winthrop's response puts forward no such evidence.[2] The AZR by-laws create no such duty owed by AZR to individual rangers. While the by-laws do lay out the duties specific AZR officers and members owe *to the organization*, no evidence suggests this document creates an enforceable contractual right by which individual rangers may sue AZR. Thus, when Mr. Winthrop points to by-laws requiring the company treasurer "maintain accurate records of the company receipts, disbursements and property[,]" (Doc. 207 at 8), he has at best shown a duty owed by the treasurer to AZR. He has not shown a duty owed by AZR to him.

This, of course, also defeats Mr. Winthrop's argument stating summary judgment is not appropriate because "[AZR] cannot prove the absence of breach." (*Id.* at 10.) Mr. Winthrop points out there is conflicting evidence regarding who actually controlled the

---

[2] Mr. Winthrop does argue that evidence demonstrates a genuine dispute of material fact exist as to whether the implied contract between the Rangers and Winthrop included the following terms:
- At all times, the Rangers oversaw Winthrop, who reported to his superior;
- Winthrop did not have any official title or role in the Rangers, and was not a voting member;
- Winthrop routinely submitted his expenses to the Rangers' East Valley Company Treasurer; and
- Winthrop's regular communications with the Rangers indicated the Rangers had knowledge of, and approved, his purchases.

(Doc. 207 at 9.) The Court notes that these appear to be assertions regarding actions taken by the parties rather than contractual duties owed to each other. Regardless, none of the items listed evidences the existence of a contractual duty owed by AZR to Mr. Winthrop to maintain records and safeguards regarding the grant funds.

grant funds and what steps were taken by AZR to put safeguards in place. (*Id.*) Further, Mr. Winthrop points out that "breach is almost always an issue of fact." (*Id.*) However, because Mr. Winthrop has failed to show AZR owed Mr. Winthrop a contractual duty to put safeguards in place, the actions taken by AZR are not *material* facts. *Liberty Lobby, Inc.*, 477 U.S. at 248 ("A material fact is any factual issue that might affect the outcome of the case under the governing substantive law.") Because AZR has put forward no evidence of duty, disputes as to whether that duty was breached are immaterial.

For each of the individual reasons listed above, the Court grants AZR's Motion for Summary Judgment on Mr. Winthrop's breach of contract claim for failure to put safeguards in place. This disposes of Mr. Winthrop's claim for lost wages.

**ii. Reimbursement Claim**

AZR also moved for summary judgement on Mr. Winthrop's remaining claim for breach of contract. Mr. Winthrop's sole remaining theory for breach of contract argues he and AZR are parties to an implied contract in which AZR agreed to reimburse him for purchases that were "authorised in executing [AZR's] affairs or were beneficial to [AZR]." (Doc 207 at 7.) According to Mr. Winthrop, AZR's has breached this implied contract by failing to repay him for a December American Express Payment totalling $299.97, and for $499.74 he spent prototyping Ranger badges. (*Id.* at 4-5.) Thus, Mr. Winthrop argues he has been damaged to the tune of $799.71. (*Id.* at 11.)

AZR argues that Mr. Winthrop cannot show the existence of an implied contract by which AZR agreed to reimburse him "***all*** expenditures he purportedly made on [AZR's] behalf." (Doc. 216 at 4.) It argues that at best the evidence supports an implied contract to reimburse Mr. Winthrop for charges specifically made on his Amex card between June 2017 and November 23, 2017. (*Id.*) AZR argues that the December American Express payment totalling $299.97 was for a hotel purchase made after it expressly told Mr. Winthrop to make no more purchases using the AmEx card, and thus was clearly outside the scope of any possible agreement. (Doc 216 at 6.) With regard to the proffered charge of $499.74 incurred for the prototyping of badges, AZR argues there is no evidence of any

agreement to reimburse Mr. Winthrop because the charge was incurred prior to June 2017 and was not made on his AmEx card. (*Id.* at 6-7.) AZR also argues that by asserting he made such a charge, Mr. Winthrop contradicts his former testimony where he claims that the only card he used on AZR's behalf was his AmEx card. (*Id.* at 7.)

The Court grants AZRs request for Summary Judgement with regard to Mr. Winthrop's claim for reimbursement of the December American Express Payment totalling $299.97. The credit card statement associated with that purchase clearly indicates the charge was incurred on December 5, 2017. The charge was payment for a hotel stay that spanned December 4-5, 2017. (Doc. 216 at 17.) Mr. Winthrop has admitted that he was instructed to cease using the AmEx card on November 21, 2017. (Doc. 208 at 7.) Thus, no matter what is unknown regarding the parties implied contract, it is uncontroverted that Mr. Winthrop was not authorized to make purchases on the card past that date. In light of the fact that the AmEx statement specifically controverts Mr. Winthrop's affidavit, (*compare* Doc. 208-8 at 3 ("I was not reimbursed for $299.97 for Rangers Expenses that were incurred prior to…November 21, 2017), *with* Doc. 216 at 17 (indicating the $299.97 charge was incurred on December 5, 2017)), and shows that the purchase was made after the date he was ordered to stop using the card, summary judgement is granted on this item of damages.

Mr. Winthrop's argument claiming the right to reimbursement through an alleged agency relationship does not change this result. Each of Mr. Winthrop's cited cases to the contrary discuss the way a principle is bound by its agents' actions *with regard to third parties. Queiroz v. Harvey*, 205 P.3d 1120, 1122 (2009) (rejecting a principle's attempt to escape liability for actions taken by its agent *in a suit against a third party* injured by the agent); *accord Ruesga v. Kindred Nursing Ctrs. W., L.L.C.*, 215 Ariz. 589, 161 P.3d 1253 (Ct. App. 2007); *Big Bear Imp. Brokers, Inc. v. LAI Game Sales, Inc.*, No. CV-08-2256-PHX-DGC, 2010 U.S. Dist. LEXIS 18604 (D. Ariz. Mar. 2, 2010). The cases do not establish the obligations of a principle *to its agent* when the agent acts against the express orders of the principle. As such, summary judgment is granted as to Mr. Winthrop's claim

for reimbursement of the $299.97 charge.

However, summary judgement is denied with regard to the $499.74 Mr. Winthrop allegedly spent prototyping Ranger badges. The Court believes that Mr. Winthrop has pointed to adequate evidence on the record such that a jury could find that the parties had an implied contract for reimbursement. If nothing else, the repeated reimbursement by the Arizona Rangers Treasurer is evidence that some implied contract to reimburse Mr. Winthrop exists. While AZR argues this contract was limited and did not extend to cover purchases made prior to June, the Court believes the actions of the parties together with Mr. Winthrop's affidavit are sufficient evidence for a jury to find the agreement extended earlier. Indeed, the only reason Mr. Winthrop's claim for reimbursement on the December charge is disallowed is because the parties do not dispute that any agreement to reimburse charges ended prior that date. (Doc. 208 at 7.) The Court finds no similar agreement setting the date reimbursement was first authorized, and as such, leaves the evidence to the jury.

The Court is not persuaded by AZR's assertion that the $499.97 claim contradicts Mr. Winthrop's deposition testimony. AZR argues that Mr. Winthrop cannot bring this claim for reimbursement because the charge was not made on the AmEx card. (Doc. 216 at 7.) As grounds for this, AZR asserts that Mr. Winthrop stated in his deposition that the only charges he made for AZR were on his AmEx card. The deposition testimony cited by AZR reads as follows:

Q. Okay. The second part of this says you were asked to purchase certain items for the benefit of the Arizona Rangers. What does that mean?

A. So -- And please let me know, sir, if this is repetitive with a prior deposition. But one of the problems that the public charities regularly face is a difficulty in obtaining credit. So, in order to procure certain items I essentially needed to guarantee or lend my credit to the Rangers so that certain things could be bought. The alternative was for them to write a check and send it across the country, wait for the check to clear, and then wait for something to come in. That was an unduly slow and archaic process. And it was recommended that, since I had the ability to extend my credit, that I simply use my personal card on behalf of the Rangers to procure those things that were either in the grant or I was directed to buy by my superiors.

Q. So this is the AmEx card we're talking about, correct?

A. That's correct.

(*Id.* (citing Doc. 191 Ex. 1).)

According to AZR, this testimony can only be interpreted as asserting that all expenditures made by Mr. Winthrop on AZR's behalf were made using the AmEx card. (*Id.*) However, the Court disagrees. While it is certainly possible to accept AZR's interpretation of this testimony, a jury could also infer that Mr. Winthrop's comments are simply explaining an eventual process by which he normalized or organized payments made on AZR's behalf. He explains that he has any number of cards tied to his personal credit account, with each card labelled so he can track his charges. (*Id.*) However he does not affirmatively assert that no charges were made on AZR's behalf other than those made after he created a sperate linked card. (*Id.*) The Court does not agree with AZR's assertion that it must disregard Mr. Winthrop's affidavit claiming to have spent $499.97 on AZR's behalf prior to creating a separately named card for such purchases.

In light of the above, the Court grants summary judgement on the entirety on Mr. Winthrop's breach of contract claim with the exception of his claim for reimbursement for the $499.97 spent to prototype badges.

### iii. Mr. Winthrop's remaining claims

AZR also seeks summary judgment of Mr. Winthrop's claim for breach of the duty of good faith and fair dealing and for unjust enrichment. With regard to both theories of relief, the Court grants summary judgment on all Mr. Winthrop's claims except for his claim for reimbursement for the $499.97 spent to prototype badges.

With regards to Mr. Winthrop's claim for lost wages, any attempt to assert such damages under a breach of the duty of good faith suffers the same defects noted in the Court's analysis of his breach of contract claim. *Supra* at III.B.ii. Additionally, the essence of the covenant of good faith and fair dealing is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual

relationship. *Beaudry v. Ins. Co. of the W*, 203 Ariz. at 91 (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 153-54 (1986)) (emphasis added); *see Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002) ("The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement."); *Rawlings*, 151 Ariz. at 155 ("The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.").

As the Court noted in the order on the parties' motion to dismiss, the inability of Mr. Winthrop to transfer his bar membership is unrelated to any "'reasonably expected benefit' under his implied contract' with AZR." (Doc. 176 at 23.) Repackaging the claim as lost wages rather than reputational damages does not somehow turn this alleged harm into the denial of an expected benefit of his alleged agreement to make purchases and be reimbursed by AZR. The same issue prevents Mr. Winthrop from recovering his charge of $299.97 under this theory. He could not reasonably have expected to be reimbursed for a charge he knowingly made after being ordered to stop making expenditures on AZR's behalf.

With regards to Mr. Winthrop's claim for unjust enrichment, the Court notes that the clear evidence shows that Mr. Winthrop made the $299.97 charge after being ordered to stop make charges on AZR's behalf. (*Compare* Doc. 208-8 at 3, *with* Doc. 216 at 17.) "To recover under a theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 226 Ariz. 242, 251 (App. 2011) (citing *City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375, 381-82 (App. 1984)). For an award based on unjust enrichment, a plaintiff must show "that the benefit was not 'conferred officiously.'" *Freeman*, 226 Ariz. at 251 (quoting *Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 53 (1985)). As the Arizona

Supreme Court has explained:

> Officiousness means interference in the affairs of others not justified by the circumstances under which the interference takes place. Policy ordinarily requires that a person who has conferred a benefit either by way of giving another services or by adding to the value of his land or by paying his debt . . . should not be permitted to require the other to pay therefor, unless the one conferring the benefit had a valid reason for so doing…[W]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjustly enriched.

*W. Coach Corp. v. Roscoe*, 133 Ariz. 147, 154 (1982) (quoting Restat 1st of Restitution, § 2).

If there is ever a time when "interference in the affairs of others" is "not justified by the circumstances[,]" it is when someone expressly orders you not to interfere. Even if Mr. Winthrop could show that AZR was somehow enriched by his use of the card in December, in light of his admission that such a purchase was made in the face of a direct and acknowledged order not to use the card, the benefit would not be one officiously conferred. Even if AZR were enriched it "is not considered to be unjustly enriched." *Roscoe*, 133 Ariz. at 154.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the parties' motions for summary judgement are granted in part and denied in part as outlined above.

Dated this 29th day of July, 2021.

Honorable Susan M. Brnovich
United States District Judge

- 24 -

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Wine Education Council, | No. CV-19-02235-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Rangers, | |
| Defendant. | |

At issue is Counterclaimant Grant G. Winthrop's Motion to Dismiss Remaining Claim and Direct Entry of Judgment Under Rule 54(b) (Doc. 281). Defendant/Third-Party Plaintiff Arizona Rangers does not object. Therefore, there is no need for a reply, and the Motion will be granted as follows:

**IT IS HEREBY ORDERED** that Grant G. Winthrop's Motion is granted as to his remaining breach of contract claim for $499.97, which is hereby dismissed with prejudice.

**IT IS FURTHER ORDERED** that there is no just reason for delay, and the Clerk is directed to enter final judgment on all claims between the Arizona Rangers and Grant Winthrop as previously set forth in this Court's rulings and orders, including in Documents 123, 176, 232 and 259, including the following claims asserted in the Arizona Rangers' Amended Third Party Complaint as against Mr. Winthrop:

1. Agency/Breach of Fiduciary Duty;

2. Negligence; and

3. Common Law Indemnity;

as well as the following claims asserted in Mr. Winthrop's Counterclaim and Amended Counterclaims and Third-Party Complaint:

1. Abuse of Process against the Arizona Rangers;

2. Breach of Contract against the Arizona Rangers;

3. Breach of the Covenant of Good Faith and Fair Dealing against the Arizona Rangers;

4. Unjust Enrichment against the Arizona Rangers; and

5. Common Law Indemnity against Jeff East.

This judgment is entered under Rule 54(b), Fed. R. Civ. P.

**IT IS FURTHER ORDERED** that motion papers regarding costs and/or attorneys' fees shall be submitted within the time limits set forth in LRCiv 54.2(b).

**IT IS FURTHER ORDERED** vacating all deadlines and trial dates as set forth in the Court's July 26, 2022 Trial Setting Order. (Doc. 262.)

Dated this 14th day of October, 2022.

Honorable Susan M. Brnovich
United States District Judge

- 2 -