**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Grant G. Winthrop,<br>Petitioner,<br>v.<br>Arizona Rangers,<br>Respondent. | No. CV-25-04317-PHX-GMS<br>**ORDER** |

Pending before the Court is Petitioner's Motion to Compel Arbitration (Doc. 24) and Respondent's Motion to Dismiss for Failure to State a Claim (Doc. 25). For the reasons that follow, Petitioner's motion to compel is denied and Respondent's motion to dismiss is granted because Petitioner has waived his right to arbitration.

## BACKGROUND

In 2016, Petitioner Grant Winthrop—then a resident of Arizona, and now a resident of Wyoming—joined Respondent's organization, the Arizona Rangers[1] (the "Rangers"), as a volunteer member. (Doc. 1 ¶¶ 1, 6; Doc. 1-1 at 7). In his role, Mr. Winthrop assisted with the Rangers' grant requests and coordinated donations to the organization. (Doc. 1-1 at 7–8; Doc. 25 at 4–5). After a dispute between Mr. Winthrop and the Rangers in 2017, Mr. Winthrop left the organization. (Doc. 1-1 at 8; Doc. 25 at 4–5).

---

[1] The Arizona Rangers "are a uniformed, civilian auxiliary" that "provide law enforcement assistance to any federal, state, and local law enforcement agencies within the State of Arizona, security services for community and civic organizations, as well as support for youth and youth organizations within Arizona." *Arizona Rangers Est. 1901*, Ariz. Rangers, https://azrangers.us/ (last visited July 13, 2026).

In April 2019, the Rangers were sued by the Wine Education Council ("WEC"), a Delaware non-profit corporation, in the District of Arizona. (*Wine Education Council v. Arizona Rangers*, No. 19-cv-02235 (D. Ariz. filed Apr. 5, 2019), ECF No. 1) [hereinafter the "2019 Action"]. WEC sought the return of certain grant funds awarded to the Rangers, alleging that the Rangers had misused and misappropriated the funds. (2019 Action, ECF No. 232 at 1–2). The Rangers denied any wrongdoing and filed a third-party complaint against Mr. Winthrop. (2019 Action, ECF No. 16). The third-party complaint alleges that Mr. Winthrop, without the knowledge of the Rangers, sought and obtained grant funds from entities over which Mr. Winthrop had control. (2019 Action, ECF No. 16 at 9). The entities then paid the Ranger grant funds to Mr. Winthrop who, when he obtained the funds, used them in a way that was negligent and violated his breach of fiduciary duty and further gave rise to a claim for common law indemnity. (*Id.*). In response, Mr. Winthrop filed counterclaims against the Rangers based on the allegations made by the Rangers in their third-party complaint against Mr. Winthrop. (2019 Action, ECF No. 64 at 6–8). The claims and counterclaims between the Rangers and Mr. Winthrop were ultimately disposed of by the district court after years of litigation. (2019 Action, ECF Nos. 284, 357).

On July 15, 2020, the Court granted the Ranger's motion to dismiss Mr. Winthrop's claim for abuse of process. (2019 Action, ECF No. 123). The Court dismissed in part Mr. Winthrop's claims for breach of contract and breach of the covenant of good faith and fair dealing on December 15, 2020. (2019 Action, ECF No. 176). Following partial motions for summary judgment, the Court granted summary judgment on "all Mr. Winthrop's claims except for his claim for reimbursement for the $499.87 spent to prototype badges" on July 29, 2021. (2019 Action, ECF No. 232 at 22). Thereafter, Mr. Winthrop requested the Court to dismiss his remaining claim for reimbursement for the $499.87 spent on prototype badges and to enter a Rule 54(b) judgment (2019 Action, ECF No. 281), which the Court did on October 14, 2022. (2019 Action, ECF No. 284). On appeal, the Ninth Circuit affirmed the District Court's dismissal of Mr. Winthrop's abuse of process claim, determined that all parties should bear their costs and attorneys' fees, and further mandated

that the Court accurately describe the judgment it entered on remand. (2019 Action, ECF No. 355-1). The District Court complied with the directives of the Ninth Circuit in August 2024. (2019 Action, ECF No. 357).

Mr. Winthrop now seeks to bring additional claims through arbitration against the Rangers based on the same underlying facts—for wrongful institution of civil proceedings tortious interference, and fraud. (Doc. 1-1 at 16–19). He further alleges that binding arbitration is the appropriate forum for such claims since he and the Rangers signed a binding agreement (the "Arbitration Agreement" or the "Agreement") to arbitrate any disputes related to his membership when he joined the organization as a volunteer. (Doc. 1 ¶ 7; Doc. 1-1 at 2). The relevant portions of the Agreement read as follows:

> By signing below, the Member hereby agrees that *all disputes*, no matter how described, pleaded, or styled, between the Member and the Arizona Rangers (the **"Corporation"**) (including its parent and any past or present affiliates, officers, employees, or lenders), *including, but not limited to, any dispute relating to any aspect of the Member's relationship with or any act or omission by the Corporation*, (**"Claim"**) shall first be resolved by use of the Grievance Resolution procedure outlined in the Arizona Rangers Governing Documents. If the Claim is not resolved, both the Corporation and the Member *irrevocably waive their rights to a trial by jury and agree instead to submit all Claims to binding, confidential, individual arbitration* before a single, neutral arbitrator under the Federal Arbitration Act (**"FAA"**) conducted by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules . . . .
>
> The FAA (including all its procedural and substantive provisions) and related federal decisional law shall govern this Agreement to the fullest extent possible.
>
> Except for the parties' right to seek relief in a small claims court as provided in this Agreement, neither party shall file an action in any court against the other, and any such action filed in violation of this Agreement shall be dismissed in favor of arbitration. The parties recognize that the breach of this Agreement will cause the other party damage including, but not limited to, attorneys' fees and costs incurred in compelling arbitration, which the breaching party will be liable for.

> . . .
>
> *Only the arbitrator is authorized to make determinations as to the scope, enforceability, validity, and effect of this Agreement.* . . . This Agreement will survive the termination of the member's relationship with the Corporation.

(Doc. 1-1 at 2 (emphasis added)).

Mr. Winthrop thus sought to initiate arbitration with the Rangers through the American Arbitration Association ("AAA"). (Doc. 1 ¶ 10). The Rangers, however, refused to participate, and the AAA closed the matter on May 6, 2025. (*Id.* ¶¶ 11–13). Mr. Winthrop then initiated this action, filing a petition to compel. (Doc. 1). The Rangers cross-move to dismiss the petition on grounds of waiver, claim preclusion and expiration of the statute of limitations. (Docs. 24–27).

**DISCUSSION**

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), federal courts must "rigorously enforce" arbitration agreements. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). If a party moves to compel arbitration under the Act, federal courts generally "must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). At Oral Argument, the Rangers conceded that there was a binding arbitration agreement between Mr. Winthrop and the Rangers for the purposes of these motions. The Rangers assert that even assuming there exists a valid arbitration agreement between themselves and Mr. Winthrop, the Rangers have defenses, including: the statute of limitations, claim preclusion and waiver by conduct. Mr. Winthrop has waived his right to arbitration due to his litigation conduct in the 2019 Action.

**I. Who Is the Proper Adjudicator**

Although the presumption is that the parties intend courts, not arbitrators, to decide disputes about arbitrability, questions including the statute of limitations and exhaustion of

prerequisites necessary to arbitration are questions of procedure—not arbitrability—normally reserved for the arbitrator. *Howsam,* 537 U.S. at 85 ("[A]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled . . . [a]nd . . . whether prerequisites such as time limits, . . . and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.") (internal citations and quotations omitted). Further, questions of arbitrability—including enforceability and scope—are also reserved for the arbitrator if the parties "clearly and unmistakably" indicate that this is their intent. *Id.* at 79 (citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).

**A. Waiver by Litigation Conduct**

"The FAA specifically recognizes that a party can waive its right to insist on arbitration if it fails to properly invoke that right." *Altela Inc. v. Ariz. Sci. & Tech. Enters. LLC*, 2016 WL 4539949, at *5 (D. Ariz. Aug. 31, 2016); *see also* 9 U.S.C. § 4 (a court may inquire into a party's "failure, neglect, or refusal to perform" an arbitration agreement). "Waiver by litigation conduct is part of the [arbitrability] category," of issues that are presumptively to be decided by the Court, unless "clearly and unmistakably" indicated by the parties. *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). Thus, ordinarily, the Court decides issues of waiver-by-litigation. *Id.* at 1123–24. "If the parties intend that an arbitrator decide [questions of waiver-by-litigation] under a particular contract, they must place clear and unmistakable language to that effect in the agreement." *Id.* at 1124.

The Ninth Circuit has set a high bar for what constitutes clear and unmistakable language that permits an arbitrator to decide the question of waiver-by-litigation. *E.g.*, *id.* In *Martin*, the Ninth Circuit determined that an arbitration agreement that delegated "all determinations as to the scope, enforceability and effect of this arbitration agreement" to the arbitrator did not clearly and unmistakably delegate the question of waiver-by-litigation. *Id.* And in *Cox v. Ocean View Hotel Corp.*, the Ninth Circuit held that an arbitration agreement stating that "any controversy . . . involving the construction or application of the terms, provisions, or conditions of this Agreement or otherwise arising

out of or related to this Agreement shall likewise be settled by arbitration" similarly did not delegate the question of waiver-by-litigation to the arbitrator. 533 F.3d 1114, 1117–1121 (9th Cir. 2008).

Here, the Court—not the arbitrator—must decide the issue of waiver-by-litigation. The Arbitration Agreement's delegation clause is nearly identical to the one in *Martin*, which does not clearly and unmistakably delegate the issue to an arbitrator. *Compare* 829 F.3d at 1124, *with* (Doc. 1-1 at 2) ("Only the arbitrator is authorized to make determinations as to the scope, enforceability, validity, and effect of this Agreement."). And even though the Arbitration Agreement also "contain[s] the all-inclusive 'arising out of or related to' language" that was present in *Cox*, that language still is not sufficient to delegate issues of waiver-by-litigation. *Martin*, 829 F.3d at 1124; (Doc. 1-1 at 2 (the Arbitration Agreement covers "all disputes . . . including, but not limited to, *any dispute relating* to any aspect of [Mr. Winthrop]'s relationship with [the Rangers]" (emphasis added))). Indeed, because the Arbitration Agreement does not specifically identify waiver as one of the issues delegated to the arbitrator, it does not clearly and unmistakably delegate questions of waiver-by-litigation. *Contrast Jennings v. Santander Consumer USA Inc.*, 2026 WL 266164, at *4 (D. Or. Jan. 30, 2026) (finding that the parties clearly and unmistakably delegated to the arbitrator questions of waiver-by-litigation where the delegation clause stated that "any allegation of waiver of rights under this Arbitration Provision . . . shall . . . be resolved by neutral, binding arbitration" (citation modified)), *with* (Doc. 1-1 at 2). "The language in the arbitration contract before [the Court] is therefore *a fortiori* insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption to the contrary." *Martin*, 829 F.3d at 1124.[2]

## II. The Merits of the Rangers' Waiver Argument

The party opposing arbitration bears the burden of showing waiver. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023). After the Supreme Court's

---

[2] The statute of limitations and collateral estoppel issues would likely be decided by the arbitrator, but the Court does not reach the choice of adjudicator questions for these issues because Mr. Winthrop waived his right to arbitration.

decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), "the test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). In his Reply Brief, Doc. 26 at 5, Mr. Winthrop merely asserts, without argument and incorrectly, that Rangers have not met their "heavy burden of proof" of establishing waiver citing *Martin v. Yasuda,* 829 F.3d 1118, 1124 (9th Cir. 2016) (citation omitted). *But see Armstrong*, 59 F.4th at 1014 ("Although the party opposing arbitration still bears the burden of showing waiver, the burden is no longer 'heavy'").

The Rangers have easily established both elements for waiver. "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate," and the Court must "consider the totality of the parties' actions." *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019) (citation omitted). "A party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (citation omitted); *see, e.g.*, *Martin*, 829 F.3d at 1126 (defendants waived their right to arbitrate by spending "seventeen months litigating the case" at hand); *Hill*, 59 F.4th at 476 (finding waiver where defendant "'actively litigated' *this case*" (emphasis added)); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding waiver where defendant "chose instead to litigate actively the entire matter—including pleadings, motions, and approving a pre-trial conference order—and did not move to compel arbitration until more than two years after the [plaintiffs] brought the action"). Choosing to extensively litigate a case in federal court "indicates an intentional and strategic decision to take advantage of the judicial forum." *Newirth ex rel. Newirth*, 931 F.3d at 941. That choice implicates waiver when the party attempts to play "a game of 'heads I win, tails you lose' by belatedly seeking refuge in arbitration for the resolution of those same claims." *Hill*, 59 F.4th at 477 (quoting *Martin*, 829 F.3d at 1125);

*see also PEB, Inc. v. Premium Merch. Funding 26, LLC*, 2025 WL 3170865, at *10 (S.D.N.Y. Nov. 13, 2025) (evaluating cases finding waiver and observing that "the effect of the motion to compel arbitration would have been to divest the court that had invested resources in the resolution of a particular dispute of any remaining jurisdiction to resolve the dispute," which would impermissibly allow the movant "to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration.").

Here, Mr. Winthrop belatedly seeks refuge in arbitration by seeking to redress his old claims and relitigate issues already decided by the Court. Mr. Winthrop's counterclaims in the 2019 Action—abuse of process, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment—arise out of the "same event and share a common nucleus of operative fact" as his claims here for wrongful institution of civil proceedings, tortious interference, and fraud. (Doc. 27 at 6). Mr. Winthrop could have sought arbitration at the beginning of the 2019 Action but failed to do so. Mr. Winthrop then vigorously litigated the 2019 Action over the course of four years, including an appeal to the Ninth Circuit. *See* 2019 Action. This lengthy litigation strategy pursued by Mr. Winthrop in the 2019 Action—in which Mr. Winthrop did not seek to compel arbitration—evidences a deliberate choice not to compel arbitration and "an intentional and strategic decision to take advantage of the judicial forum." *Newirth ex rel. Newirth*, 931 F.3d at 941. Litigating in this Court for four years without compelling arbitration demonstrates a waiver of Mr. Winthrop's right to arbitration.

Mr. Winthrop argues that his new claim for wrongful institution of civil proceedings is legally distinct from his abuse of process claim, so he has not yet waived arbitration for this claim. This argument fails by conflating the standard for claim preclusion with the standard for waiver of a right to arbitration due to litigation conduct. The wrongful institution of civil proceedings relates to and concerns the 2019 Action, in which Mr. Winthrop waived his right to arbitration because he chose to extensively litigate that claim in this Court. Simply put; Mr. Winthrop should have sought to compel arbitration during

the 2019 Action and cannot have two bites at the apple by seeking arbitration following four years of litigation and seven years since the beginning of the 2019 Action.

Mr. Winthrop's Motion to Compel Arbitration is denied because he has waived his right to arbitration through his litigation conduct during the 2019 Action. The Rangers' Motion to Dismiss for Failure to State a Claim is granted because the denial of the Motion to Compel is dispositive of this matter and leaves no other issues in dispute.

## CONCLUSION

**IT IS THEREFORE ORDERED** Respondent's Motion to Dismiss (Doc. 25) is **GRANTED with prejudice.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Compel Arbitration (Doc. 24) is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court terminate this action and enter judgment accordingly.

Dated this 14th day of September, 2026.

G. Murray Snow
Senior United States District Judge